Leo Shimick, appellee, v. Cudahy Packing Company, appellant.

Filed June 5, 1915. No. 18174.

1. **Appeal: Personal Injuries: Instructions.** Where the questions of the negligence of the defendant and the contributory negligence of the plaintiff in a personal injury suit are submitted to a jury under proper instructions, the verdict will not be set aside unless clearly wrong.

2. **Master and Servant: Injury to Servant: Questions for Jury.** Questions as to the nature and extent of the injury, the disability resulting to plaintiff from the accident, and the amount of the recovery, are ordinarily questions for the determination of the jury.

3. **Excessive Damages.** The evidence set out in the opinion examined, and *held* that a judgment for $7,500 based thereon is excessive.

Appeal from the district court for Douglas county: Abraham L. Sutton, Judge. *Affirmed as modified.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*William R. Patrick* and *C. J. Southard, contra.*

Barnes, J.

Appeal from a judgment of the district court for Douglas county against the Cudahy Packing Company and Charles Rooney, in an action brought by Leo Shimick to recover damages for a personal injury sustained by him while employed by the packing company.

It appears that the plaintiff was working as a steam fitter in putting the glycerine plant of the company in working order. On the 4th day of January, 1912, plaintiff was ordered to repair the super-heater, which was located in a corner of the building used by the company as a glycerine plant. Plaintiff and his helper stripped off the asbestos covering of the super-heater in order to ascertain where it leaked. When the asbestos was removed it was found that it would be necessary to put pressure on

the heater in order to find the leaks. Plaintiff went out of the building in order to inform the foreman of that fact. The room was so full of steam that objects therein were not distinguishable. When plaintiff returned, in passing to the place where the heater was situated, he fell into an open trap or catch-basin in the floor of the building, and thus sustained the injuries for which he has brought suit.

It clearly appears from the evidence that plaintiff was familiar with the room, but there is no evidence that he had ever seen the catch-basin or knew of its location. It was ordinarily protected by a plank covering, over which one could pass without knowing what he was on or knowing that it was at all dangerous. It appears that defendant Rooney, who was the foreman in charge, had that morning ordered some of the workmen to clean out the catch-basin. The cover had been removed and set back against the wall, leaving the basin open. The hole thus left exposed in the floor was about four feet square and from five to six feet deep. The direction traversed by plaintiff in going to consult with Rooney did not require him to pass over or near the catch-basin, but in returning he took a little different course and walked directly into the hole. As he fell into the catch-basin he struck his right arm and forearm on the opposite cement edge of the hole, and thus received his injuries. It appears that the steam in the building was so dense that the hole could not be seen, and persons working near it could not be distinguished. It is claimed by appellant that when plaintiff started to find the foreman he was warned of the danger by one of the men. The testimony on that point, however, is somewhat conflicting and unsatisfactory. Witness Bowman claims to have said: "Look out for the hole, it is open;" and plaintiff, in reply, said, "I know." It appears, however, that there was an open sewer trench running along the side of the room from north to south about one foot wide and from one foot to 15 inches deep. It is plaintiff's contention that this is what he understood was meant by the warning; that this was the hole that he knew was

there. It seems fairly clear that the plaintiff had no knowledge of the existence of the catch-basin into which he fell.

The questions as to defendant's negligence and the alleged contributory negligence of the plaintiff were submitted to the jury under proper instructions and the verdict so far as these questions are concerned, must be held to be conclusive. It is contended that certain fixed objects near and surrounding the catch-basin rendered it practically impossible for plaintiff to have fallen into it without striking some of them, but it is sufficient to say that plaintiff walked into the open hole and was pulled out by the persons who were there present, and this question requires no further consideration.

It is strenuously urged by the appellant that plaintiff's injuries were slight and trivial, and that therefore the judgment is so excessive as to require a reversal. The record on this question is very voluminous and the evidence is somewhat conflicting. We think it clearly appears that plaintiff was quite severely injured. It was shown that in September, preceding the date of his fall into the catch-basin, plaintiff had received an injury to his right forearm or wrist, known as a Colle's fracture; that he had fully recovered from that injury, and went to work for the defendant company at his trade as a steam fitter on the 18th day of December, 1911; that he experienced no difficulty in performing his labors. It also appears that he was a first-class workman. When he fell into the catch-basin he struck his wrist and forearm on the cement edge of the hole. His arm and wrist were bruised and sprained; the skin was abraded, and the flesh was some swollen and discolored. He also received an injury to his arm and shoulder. The defendant's house physician considered that the injury was so severe as to require him to place the wrist and forearm in splints. The injury became more painful, and on the second day thereafter plaintiff called in Dr. Chaloupka, who was his family physician, to attend to the injuries and to relieve his pain. The doctor removed the splints and ascertained that the plaintiff's injuries had been properly treated. He also ascertained that

Shimick v. Cudahy Packing Co.

the arm was much swollen, bruised and discolored. He put new dressings and splints on the injured wrist and forearm, and continued to treat plaintiff for two or three times a week during the folowing ten weeks, after which time he only administered occasional treatment. The doctor testified that at the time of the trial, which was about 15 months after the injury was received, plaintiff's recovery was slow; that his arm did not seem to regain strength; that he could not shut his hand. The motion of his forearm was poor, and there was some considerable ankylosis of the shoulder joint; that plaintiff's wrist was stiff, and he cannot lift his arm to a height of over 45 degrees, so that the use of his hand and arm have been impaired to the extent of 50 or 60 per cent. of the normal; that there are adhesions of the tendons, and that plaintiff is not able to follow his occupation as a steam fitter. The testimony of Dr. Chaloupka was fully corroborated by the evidence of Dr. Koutsky and others. Some X-ray negatives of the plaintiff's injured hand and forearm were produced in evidence, which showed an ankylosis or fusion of the carpal bones of the hand, a fracture of the styloid process of the right ulna, and a partial severing of two of the tendons of the plaintiff's right wrist. In fact, it was made clear that plaintiff had sustained a severe injury. On the other hand, defendant availed itself of the testimony of medical experts whose evidence tended to show that plaintiff's injuries were slight, and one of the witnesses testified that in his opinion plaintiff was malingering, but the great weight of all of the evidence destroys that theory of the defense. It seems clear to us that plaintiff was entitled to a substantial judgment. It is contended, however, that the judgment, which was for $7,500, is grossly excessive, and, in view of the fact that there will be some improvement in plaintiff's use of his arm and hand, we think the judgment should be reduced to $5,000, with interest from the date of its rendition by the district court. As thus reduced, the judgment is

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.